**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FORREST J. WHICHARD IV,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **Case No. 4:26-cv-10193** |
| | § | |
| **FIRST ENVIRONMENT EROSION CONTROLS, INC. AND RICHARD J. MARTIN** | § § § | |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Forrest J. Whichard IV brings this suit for unpaid overtime, unpaid minimum wages, retaliation, breach of contract, and quantum meruit against First Environment Erosion Controls, Inc. and Richard J. Martin. For cause of action, he respectfully shows as follows:

## I. NATURE OF SUIT

1. First Environment Erosion Controls, Inc. employed Forrest J. Whichard IV to operate tractors, mowers, a skid steer, and a woodchipper on stormwater, drainage, and landscaping jobs in and around the Houston area.

2. Defendants paid him a salary and treated him as exempt from overtime.

3. Defendants never paid him overtime premiums, although he consistently worked more than forty hours per week.

4. Mr. Whichard complained in writing about his hours and his pay.

5. The next morning, Martin, Whichard's supervisor and the owner of First Environment, told Whichard to retract his written complaint.

6. Defendants subsequently demanded the return of the company vehicle he used to get to work.

7. Defendants then threatened to report him to the police.

8. Defendants then falsely accused him of damaging equipment.

9. Ultimately Defendants fired Whichard.

10. Mr. Whichard sues Defendants for the overtime and minimum wages they failed to pay him, the wages he lost because of their retaliation, liquidated damages, attorney's fees, and costs under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

11. In the alternative, Mr. Whichard sues First Environment Erosion Controls, Inc. under Texas law for breach of contract and quantum meruit for the salary it failed to pay him for days he worked.

## II. PARTIES

12. Plaintiff Forrest J. Whichard IV is an individual who resides in Seabrook, Harris County, Texas.

13. Defendant First Environment Erosion Controls, Inc. is a Texas for-profit corporation, Texas Secretary of State file number 801310145.

14. First Environment Erosion Controls, Inc. may be served with process through its registered agent, Richard J. Martin, at 27510 Huggins Crest Court, Fulshear, Texas 77441.

15. Defendant Richard J. Martin is an individual who owns First Environment Erosion Controls, Inc. and is its only officer of record.

16. Richard J. Martin may be served with process at 27510 Huggins Crest Court, Fulshear, Texas 77441, at 21311 Fairhaven Creek Drive, Cypress, Texas 77433, or wherever he may be found.

17. At all times relevant to this Complaint, First Environment Erosion Controls, Inc. was an employer of Mr. Whichard within the meaning of 29 U.S.C. § 203(d).

18. First Environment Erosion Controls, Inc. hired Mr. Whichard.

19. First Environment Erosion Controls, Inc. set Mr. Whichard's salary.

20. First Environment Erosion Controls, Inc. paid Mr. Whichard.

21. First Environment Erosion Controls, Inc. maintained Mr. Whichard's payroll records.

22. First Environment Erosion Controls, Inc. provided the vehicle, telephone, computer, and equipment Mr. Whichard used in his work.

23. At all times relevant to this Complaint, Richard J. Martin was an employer of Mr. Whichard within the meaning of 29 U.S.C. § 203(d).

24. Martin had operational control over First Environment Erosion Controls, Inc.

25. Martin hired Mr. Whichard.

26. Martin negotiated the terms of Mr. Whichard's employment with him.

27. Martin set Mr. Whichard's compensation.

28. Martin assigned Mr. Whichard his work each day.

29. Martin decided which job sites Mr. Whichard worked at and which tasks he performed there.

30. Martin set Mr. Whichard's working hours.

31. Martin directed Defendants' office manager to deduct three days from Mr. Whichard's pay in August 2026.

32. Martin demanded the return of the company vehicle, telephone, computer, and keys Mr. Whichard used in his work.

33. Martin ended Mr. Whichard's employment.

## III. JURISDICTION AND VENUE

34. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

35. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Mr. Whichard's claims under Texas law because those claims arise from the same employment and the same unpaid work as his claims under the Fair Labor Standards Act and form part of the same case or controversy.

36. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Mr. Whichard's claims occurred in this District.

37. Mr. Whichard resides in Seabrook, Texas, in Harris County.

38. Martin resides at 21311 Fairhaven Creek Drive, Cypress, Texas, in Harris County.

39. First Environment Erosion Controls, Inc. operates a shop at 31929 Morrison Road, Brookshire, Texas, in Waller County.

40. Mr. Whichard performed his work in and around Katy and Brookshire, Texas.

41. Harris County and Waller County are in the Houston Division of the Southern District of Texas.

42. This Court has personal jurisdiction over Defendants because First Environment Erosion Controls, Inc. is a Texas corporation that does business in this District and Martin resides in Texas and directs its business in Texas.

## IV. COVERAGE UNDER THE FLSA

43. At all times relevant to this Complaint, Defendants were employers within the meaning of 29 U.S.C. § 203(d).

44. At all times relevant to this Complaint, Defendants operated an enterprise within the meaning of 29 U.S.C. § 203(r).

45. At all times relevant to this Complaint, Defendants operated an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), in that the enterprise had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

46. At all times relevant to this Complaint, the enterprise had an annual gross volume of sales made or business done of not less than $500,000, exclusive of excise taxes at the retail level that are separately stated.

47. At all times relevant to this Complaint, Mr. Whichard was an employee of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

48. At all times relevant to this Complaint, Mr. Whichard and other employees of Defendants handled goods and materials that had moved in interstate commerce, including tractors, mowers, a skid steer, and a woodchipper.

49. Mr. Whichard ordered materials for Defendants from vendors outside Texas.

50. Mr. Whichard received those materials at Defendants' warehouse.

## V. FACTUAL ALLEGATIONS

51. First Environment Erosion Controls, Inc. maintains detention ponds, retention ponds, drainage channels, and landscaping for municipal utility districts and other customers in the Houston area.

52. Defendants employed Mr. Whichard from February 12, 2026, through September 15, 2026.

53. When Mr. Whichard accepted Defendants' offer of employment, he lived in Seabrook, Texas, about an hour and a half from Defendants' shop in Brookshire, and he did not own a vehicle.

54. Before he accepted the offer, Mr. Whichard told Martin that the job had to include the use of a company vehicle because he had no other way to get to work.

55. Martin agreed to that condition.

56. When Mr. Whichard started work, Defendants provided him a company pickup truck and a company card to pay for fuel.

57. Defendants gave Mr. Whichard the title of project manager.

58. Mr. Whichard's work for Defendants was primarily manual field work.

59. Mr. Whichard operated tractors, mowers, a skid steer, and a wood chipper.

60. Mr. Whichard loaded and unloaded trucks, trailers, and equipment at Defendants' shop.

61. Mr. Whichard operated mowers at Defendants' job sites.

62. Mr. Whichard chipped trees at Defendants' job sites.

63. Mr. Whichard spread mulch at Defendants' job sites.

64. Mr. Whichard applied herbicide at Defendants' job sites.

65. Mr. Whichard maintained detention ponds and drainage areas at Defendants' job sites.

66. Mr. Whichard's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of Defendants or their customers.

67. Mr. Whichard did not exercise discretion and independent judgment with respect to matters of significance.

68. Mr. Whichard's primary duty was not the management of Defendants' enterprise or of any recognized department or subdivision of it.

69. A foreman employed by Defendants directed the work of Defendants' field crew.

70. Mr. Whichard did not customarily and regularly direct the work of two or more full-time employees.

71. Mr. Whichard had no authority to hire or fire other employees.

72. Defendants did not give particular weight to any recommendation by Mr. Whichard about the hiring, firing, advancement, promotion, discipline, or other change of status of any employee.

73. Defendants determined the jobs Mr. Whichard worked, the equipment he used, and the work he performed at each job.

74. Defendants paid Mr. Whichard a salary of $80,000 a year.

75. In July 2026, Defendants raised Mr. Whichard's salary to $90,000 a year.

76. On the evening of Thursday, August 13, 2026, Martin told Mr. Whichard that his working hours would be 7:00 a.m. to 5:00 p.m.

77. On the evening of Friday, August 14, 2026, Mr. Whichard sent Martin a text message saying that he was going home.

78. Mr. Whichard sent that message after 5:00 p.m., and in it he told Martin that he had worked about 70 to 80 hours that week.

79. At 8:55 p.m. that evening, Martin replied by text message: "Go ahead and take Monday, Tuesday and Wednesday off but I'm not paying PTO."

80. Martin made Mr. Whichard take off Monday, August 17, Tuesday, August 18, and Wednesday, August 19, 2026, without pay.

81. On August 28, 2026, Defendants' office manager told Mr. Whichard by text message: "Richard made me dock you the three days from last week."

82. For the pay period of August 13 through August 19, 2026, Defendants paid Mr. Whichard $692.31, which their pay records state as $43.27 per hour for 16 hours.

83. Mr. Whichard consistently worked more than forty hours per week.

84. Defendants never paid Mr. Whichard any overtime compensation for the hours he worked in excess of forty in a workweek.

85. No exemption under 29 U.S.C. § 213 applied to Mr. Whichard.

86. Defendants knew that Mr. Whichard worked more than forty hours in a workweek.

87. Defendants set Mr. Whichard's hours.

88. Mr. Whichard performed his work at Defendants' shop and job sites.

89. Defendants failed to make, keep, and preserve accurate records of the hours Mr. Whichard worked, as 29 U.S.C. § 211(c) requires.

90. Defendants willfully failed to pay Mr. Whichard overtime compensation.

91. Defendants did not act in good faith when they did not pay Mr. Whichard overtime, and they had no reasonable grounds for believing that they complied with the Fair Labor Standards Act.

92. In late August 2026, Mr. Whichard asked Defendants' office manager in writing whether he was being paid by the day, by the hour, or by the week.

93. In the same message, Mr. Whichard told her that his paycheck did not cover all of the days he had worked.

94. On September 2, 2026, Mr. Whichard sent Martin an email, with a copy to Defendants' office manager, complaining in writing about his hours and his pay.

95. In that email, Mr. Whichard wrote that Defendants had paid him for only two of the three days he worked from August 20 through August 22, 2026.

96. In the same email, Mr. Whichard wrote that he was "being expected to work 60–70+ hour weeks, including substantial manual labor," and that he expected "to be properly compensated for the work I perform."

97. Mr. Whichard's inquiry and his September 2, 2026 email were complaints about Defendants' failure to pay him the wages the Fair Labor Standards Act requires.

98. At 8:05 a.m. on September 3, 2026, the morning after Mr. Whichard sent that email, Defendants' office manager sent him a text message: "Hi Joe, please get the car back to Richard or make some arrangements ASAP. If he doesn't have it by 9am, he is reporting it stolen."

99. The car in that text message was the company vehicle that Defendants had provided Mr. Whichard to drive to and from work while the company pickup truck he used was in the repair shop.

100. Later that morning, at Defendants' shop, Martin told Mr. Whichard to delete his September 2, 2026 email, unsend it, or otherwise take it back.

101. In the same conversation, Martin asked Mr. Whichard whether he was going to sue him, and Martin said that this had happened to him twice before.

102. Mr. Whichard did not withdraw his complaint.

103. Before Mr. Whichard's complaints, Defendants provided him a company vehicle, which he drove to and from work.

104. In September 2026, after Mr. Whichard's complaints, Defendants demanded that he return the company vehicle, telephone, computer, and keys.

105. On Friday, September 11, 2026, Mr. Whichard told Martin by text message that he was sick and that he needed to rest after operating the woodchipper in the rain the previous day.

106. At 12:14 p.m. that day, Martin sent Mr. Whichard a text message: "Be at work Saturday or come Monday drop all your stuff off everything computer phone keys in my car everything."

107. At 1:20 p.m. that same day, Defendants' office manager sent Mr. Whichard a text message telling him that if he was not going to work the next day (Saturday), he would "need to be sure to bring in all company assets including but not limited to phone, iPad, computer and company provided vehicle first thing Monday morning."

108. Later that evening, after a 6:20 p.m. message from Mr. Whichard, Defendants' office manager sent Mr. Whichard a text message stating: "If company property is not immediately surrendered tomorrow, police will be notified of stolen vehicles and property."

109. On September 14, 2026, Defendants accused Mr. Whichard of damaging Defendants' woodchipper.

110. Mr. Whichard did not operate the woodchipper after September 10, 2026, although other employees had operated the woodchipper after September 10, 2026.

111. On September 14, 2026, Martin also told Mr. Whichard that he could not keep paying for Mr. Whichard's gas and that Mr. Whichard would need to find his own way to work from then on.

112. Mr. Whichard worked the rest of the day on September 14, 2026.

113. On the morning of September 15, 2026, Martin called Mr. Whichard and accused him of stealing the company vehicle.

114. During the same call, Martin told Mr. Whichard that he was no longer permitted to use the company vehicle and that if he could not find his own way to work, he could quit.

115. Mr. Whichard asked Martin to put this change to the terms and conditions of his employment in writing.

116. Martin refused to put the change in writing.

117. On the morning of September 15, 2026, Mr. Whichard returned the company vehicle to Defendants' shop and took a company pickup truck to begin work.

118. Later that morning, after receiving multiple harassing calls from Martin, Mr. Whichard left this same company pickup truck, the company telephone, and the company card at one of the company's staging areas, located at 22225 Elyson Falls Drive, Katy, Texas.

119. That same day, Mr. Whichard sent Martin and Defendants' office manager an email stating that the return of the property "should not be construed as a resignation or voluntary termination of my employment."

120. Martin knew that Mr. Whichard had no vehicle of his own and no other way to travel from Seabrook to Defendants' shop and job sites.

121. When Martin took away the company vehicle, he knew that Mr. Whichard could no longer get to work.

122. Defendants ended Mr. Whichard's employment on September 15, 2026.

123. Defendants paid Mr. Whichard nothing for the work he performed from September 10 through September 15, 2026.

124. Defendants' payroll records list Mr. Whichard's employment status as "Terminated."

125. Defendants ended Mr. Whichard's employment because he complained about Defendants' failure to pay him the wages the Fair Labor Standards Act requires.

126. Mr. Whichard has not worked since September 15, 2026.

127. Mr. Whichard has lost wages and benefits because Defendants ended his employment.

128. On October 30, 2026, Plaintiff's counsel sent Defendants a settlement letter with a draft complaint by first-class and certified mail.

129. Defendants never responded to that letter.

## VI. COUNT ONE: UNPAID OVERTIME UNDER THE FLSA

130. Mr. Whichard incorporates the preceding paragraphs as though fully set forth in this section.

131. Defendants violated 29 U.S.C. § 207 by failing to pay Mr. Whichard one and one-half times his regular rate of pay for the hours he worked in excess of forty in a workweek.

132. Defendants violated 29 U.S.C. § 215(a)(2) by employing Mr. Whichard in violation of 29 U.S.C. § 207.

133. Defendants willfully violated the Fair Labor Standards Act.

134. The three-year limitations period of 29 U.S.C. § 255(a) applies to Mr. Whichard's claims.

135. Mr. Whichard is entitled to his unpaid overtime compensation and to an additional equal amount as liquidated damages under 29 U.S.C. § 216(b).

## VII. COUNT TWO: UNPAID MINIMUM WAGE UNDER THE FLSA

136. Mr. Whichard incorporates the preceding paragraphs as though fully set forth in this section.

137. Defendants violated 29 U.S.C. § 206 by failing to pay Mr. Whichard at least the federal minimum wage for the hours he worked from September 10 through September 15, 2026.

138. Defendants violated 29 U.S.C. § 215(a)(2) by employing Mr. Whichard in violation of 29 U.S.C. § 206.

139. Mr. Whichard is entitled to his unpaid minimum wages and to an additional equal amount as liquidated damages under 29 U.S.C. § 216(b).

## VIII. COUNT THREE: RETALIATION UNDER THE FLSA

140. Mr. Whichard incorporates the preceding paragraphs as though fully set forth in this section.

141. Mr. Whichard engaged in activity protected by 29 U.S.C. § 215(a)(3) when he complained to Defendants about his hours and his pay.

142. Defendants took adverse actions against Mr. Whichard after his complaints, including demanding that he take back his written complaint, demanding the return of the company vehicle he used to get to work, threatening to report him to the police, and ending his employment.

143. Defendants took those actions because Mr. Whichard complained about his hours and his pay.

144. Defendants violated 29 U.S.C. § 215(a)(3) by discharging and otherwise discriminating against Mr. Whichard because he complained about Defendants' failure to pay him the wages the Fair Labor Standards Act requires.

145. Under 29 U.S.C. § 216(b), Mr. Whichard is entitled to such legal or equitable relief as may be appropriate, including his lost wages, an additional equal amount as liquidated damages, compensatory damages, and reinstatement or front pay.

## IX. COUNT FOUR: BREACH OF CONTRACT UNDER TEXAS LAW

146. Mr. Whichard incorporates the preceding paragraphs as though fully set forth in this section.

147. Mr. Whichard pleads this count in the alternative under Federal Rule of Civil Procedure 8(d)(2).

148. Mr. Whichard and First Environment Erosion Controls, Inc. agreed that First Environment Erosion Controls, Inc. would employ him at a salary of $80,000 a year.

149. In July 2026, First Environment Erosion Controls, Inc. raised Mr. Whichard's salary to $90,000 a year.

150. Mr. Whichard performed his obligations under the agreement by working for First Environment Erosion Controls, Inc.

151. First Environment Erosion Controls, Inc. breached the agreement by failing to pay Mr. Whichard his salary for all days he worked, including the days he worked from September 10 through September 15, 2026, and for days he worked and/or was available to work from August 17 through August 22, 2026.

152. Mr. Whichard suffered damages in the amount of the salary First Environment Erosion Controls, Inc. failed to pay him.

## X. COUNT FIVE: QUANTUM MERUIT UNDER TEXAS LAW

153. Mr. Whichard incorporates the preceding paragraphs as though fully set forth in this section.

154. Mr. Whichard pleads this count in the alternative to Count Four, for any work that no express agreement covers.

155. Mr. Whichard furnished valuable services to First Environment Erosion Controls, Inc., including the work he performed from September 10 through September 15, 2026.

156. First Environment Erosion Controls, Inc. accepted, used, and enjoyed those services.

157. First Environment Erosion Controls, Inc. accepted those services under circumstances that reasonably notified it that Mr. Whichard expected to be paid for them.

158. Mr. Whichard is entitled to recover the reasonable value of those services from First Environment Erosion Controls, Inc.

## XI. PRAYER FOR RELIEF

Plaintiff Forrest J. Whichard IV respectfully requests that the Court enter judgment against First Environment Erosion Controls, Inc. and Richard J. Martin, jointly and severally, and award the following:

a. Unpaid overtime compensation under 29 U.S.C. § 207;

b. Unpaid minimum wages under 29 U.S.C. § 206;

c. Unpaid salary under Mr. Whichard's agreement with First Environment Erosion Controls, Inc., or in the alternative the reasonable value of his services;

d. Lost wages and benefits, compensatory damages, and reinstatement or front pay for Defendants' retaliation under 29 U.S.C. §§ 215(a)(3) and 216(b);

e. An additional equal amount as liquidated damages under 29 U.S.C. § 216(b);

f. Reasonable attorney's fees and the costs of this action under 29 U.S.C. § 216(b);

g. Pre-judgment and post-judgment interest at the highest rates allowed by law;

h. A declaration that Defendants violated the Fair Labor Standards Act, and an injunction restraining further violations; and

i. All other relief, at law or in equity, to which Mr. Whichard may be entitled.

Respectfully Submitted,

WELMAKER LAW, PLLC
505 E. Magrill
Longview, Texas 75601
Tel: (512) 799-2048

By: <u>*/s/ Douglas B. Welmaker*</u>
Douglas B. Welmaker
Texas State Bar No. 00788641
S.D. Tex. Bar No. 17038
doug@welmakerlaw.com
Attorney-in-Charge

**ATTORNEY FOR PLAINTIFF**